IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK M. SULLIVAN, III, and SURVIVOR MUSIC, INC., | ) ) ) | |
| Plaintiffs, | ) ) | 18 C 3770 |
| v. | ) ) | |
| DAVID BICKLER, | ) ) | Judge John Z. Lee |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Frank Sullivan and Survivor Music, Inc. ("Survivor Music") filed this lawsuit against David Bickler ("Bickler"), the former lead singer of the rock band Survivor, alleging that he has been improperly using the name "Survivor" to promote his solo performances since he left the band in 1984. Plaintiffs raise claims of trademark infringement, 15 U.S.C. § 1114(1), unfair competition, 15 U.S.C. § 1125(a), and breach of contract. Bickler moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), or for failure to state a claim pursuant to Rule 12(b)(6). For the reasons provided, the Court denies Bickler's motion to dismiss [16].

### Factual Background[1]

Sullivan, who lives in Illinois, is a founding member of the band Survivor and owns the trademark "Survivor," which he has used since 1977. Compl. ¶¶ 4, 10, ECF

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In addition to the complaint itself, on a

No. 1. Survivor Music is an Illinois corporation and is the exclusive licensee of the SURVIVOR mark. *Id.* ¶ 5. Sullivan is Survivor Music's sole shareholder and director. *Id.* Bickler, another founding member of Survivor, resides in Chappaqua, New York. *Id.* ¶¶ 6–7.

When Bickler left Survivor in 1984, he signed an agreement that governed his departure from the band (the "Withdrawal Agreement"). *Id.* ¶¶ 7–8. In relevant part, the Withdrawal Agreement provided that Bickler was to continue receiving royalties from certain of Survivor's recordings. Compl., Ex. A, Withdrawal Agreement ¶ 5a. Survivor Corp. (the predecessor to Survivor Music, *see* Compl. ¶ 9) and the remaining members of the band were to "use their best efforts" to ensure that Bickler received these royalties, including paying the royalties if the recording label failed to do so. Compl., Ex. A, Withdrawal Agreement ¶ 5a. With the exception of these royalties, however, Bickler acknowledged that he had "no further right or interest of any kind in any of the stock or assets of any kind whatsoever (tangible or intangible)" of Survivor Corp., the band Survivor, or any of the remaining members of the band. *Id.* ¶ 5d; *see* Compl. ¶ 8.

Despite Bickler's agreement to relinquish Survivor's assets, Plaintiffs claim that he has "used the SURVIVOR mark in connection with and to promote his post-departure activities in Illinois and in interstate commerce, without authorization from Sullivan or from Survivor Music." Compl. ¶ 11. In particular, Bickler

---

motion to dismiss the Court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

2

"extensively uses the Survivor logo and covers from the band's albums on his website and in promoting his appearances." *Id.* For example, "Survivor" is "featured prominently" on the "About Dave" page of Bickler's website. *Id.*; *see* Compl., Ex. B. Further, in promotional material for a concert in Georgia, Bickler was described as the "former lead singer for the rock group Survivor." Compl., Ex. D. Bickler also maintains an Instagram account under the username "thesurvivordave." Compl. ¶ 11; *see* Compl., Ex. C. His Instagram page describes him as "An American vocalist, best known as original lead singer for the rock band Survivor." Compl., Ex. C.

Sullivan and Survivor Music allege that Bickler's "continued unauthorized use of the mark SURVIVOR in connection with his musical performances creates the misleading impression that Bickler remains a member of or is otherwise affiliated with" the band Survivor. Compl. ¶ 13. Plaintiffs raise claims for breach of contract (Count I), trademark infringement in violation of 15 U.S.C. § 1114 (Count II), and unfair competition in violation of 15 U.S.C. § 1125 (Count III). Bickler has moved to dismiss the complaint for lack of personal jurisdiction or for failure to state a claim.

## Legal Standards

### I. Rule 12(b)(2)

A court that lacks personal jurisdiction over a defendant must dismiss the case as to that party. *See* Fed. R. Civ. P. 12(b)(2). If a defendant moves to dismiss pursuant to Rule 12(b)(2), it places the burden on the plaintiff to demonstrate that the court has personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In making this

3

determination, the court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Purdue*, 338 F.3d at 782. When there is no dispute of material fact and a court rules solely based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court can, however, consider affidavits and other supporting materials and must resolve any conflicts in the affidavits and supporting materials in the plaintiff's favor. *Id.* at 782–83.

When considering a Rule 12(b)(2) motion, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). "The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Brook v. McCormley*, 873

4

F.3d 549, 552 (7th Cir. 2017)). It is the plaintiff's burden to establish a *prima facie* showing of jurisdiction. *Id*.

## II. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

## I. Motion to Dismiss for Lack of Personal Jurisdiction

Bickler argues that he is not subject to personal jurisdiction in Illinois, because he no longer lives in the state and has no significant contact with it. Plaintiffs contend that Bickler is subject to personal jurisdiction in Illinois, because the

5

Withdrawal Agreement was negotiated and signed in Illinois, Bickler has continued to transact business with Survivor Music in Illinois pursuant to the agreement, and he has infringed Sullivan's trademark in Illinois.

There are two forms of personal jurisdiction—general and specific. "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

### A. General Personal Jurisdiction

Plaintiffs contend that Bickler is subject to general personal jurisdiction in Illinois because of his "continuous contact with Illinois, including his on-going [*sic*] receipt of monies from an Illinois corporation, repeated communications with Survivor [Music], his on again/off again employment, and his solo performances within the state." Pl.'s Resp. Opp. Mot. Dismiss at 8, ECF No. 28. "For an individual," however, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiffs do not contest that Bickler's domicile is New York, not Illinois. *See* Compl. ¶ 6; Bickler Aff. ¶ 4, ECF No. 16-1. Bickler's mere communications and activities in Illinois are insufficient to subject him to general personal jurisdiction in Illinois.

## B. Specific Personal Jurisdiction

Plaintiffs also contend that Bickler is subject to specific personal jurisdiction in Illinois. A court may exercise specific personal jurisdiction over a defendant when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "In either case, the ultimate constitutional standard is whether the defendant had 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *GoDaddy*, 623 F.3d at 425 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum-contacts analysis varies depending on the type of claim alleged. *See Felland v. Clifton,* 682 F.3d 665, 674 (7th Cir. 2012). For torts, "the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Id.* (quoting *Tamburo,* 601 F.3d at 702). In contrast, where specific jurisdiction is alleged to arise out of a contract, "it is only the 'dealings *between the parties in regard to the disputed contract'* that are relevant." *Id.* (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)) (emphasis in original). With respect to contracts, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761–62 (7th Cir. 2008). In either case, it must be the defendant's "suit-related conduct"—in

other words, contacts the defendant himself created with the forum state—that form the basis for personal jurisdiction. *Walden*, 571 U.S. at 284–85.

Plaintiffs contend that Bicker is subject to specific personal jurisdiction in Illinois based on his commission of tortious acts of trademark infringement in Illinois and his contractual relationship with Survivor Music, which is an Illinois corporation. As to Plaintiffs' tort claim, the Court concludes that Plaintiffs have failed to establish the minimum contacts necessary for specific jurisdiction. Plaintiffs' complaint is vague at best with respect to Bickler's tortious activities in Illinois. For instance, Plaintiffs allege that "Bickler has used the SURVIVOR mark in connection with and to promote his post-departure activities in Illinois and in interstate commerce," Compl. ¶ 11, but the examples they provide fail to support this assertion. These examples show only that Bickler has used the name "Survivor" on his website, Instagram page, and in promotional materials for a concert he performed in Georgia. *See id.* ¶ 11, Exs. B–D. Merely operating a website that is accessible from Illinois does not suffice to establish minimum contacts with the state, *see b2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011), and the complaint otherwise fails to establish that Bickler actually used the "Survivor" name in any activities targeted to Illinois.

In response, Plaintiffs assert that there *is* evidence that Bickler has used the "Survivor" brand while performing in Illinois.² They explain that, in January 2018, Bickler performed in Naperville, Illinois, and commemorated his performance with a

---

² The Court may consider such evidence in determining the scope of personal jurisdiction. *See Purdue*, 338 F.3d at 782–83.

8

photo posted to his "thesurvivordave" Instagram account.³ *See* Holzhall Decl., Ex. A. Further, the photo gallery on Bickler's promotional website includes photographs taken in Illinois, such as one captioned "Chicago Soundstage 2008 – With Jimi and Jim," and another captioned "Chicago House of Blues – Onstage with Jim 2010." *Id.*, Ex. E. Although these photographs indicate that Bickler performed in Illinois, they do not establish that Bickler used the "Survivor" mark while he was doing so. Accordingly, Plaintiffs have failed to set forth a "substantial connection" between Bickler's alleged use of the "Survivor" trademark and his activities in Illinois. *See Walden*, 571 U.S. at 284.

Bickler's contractual relationship with Survivor Music, however, is a different matter. The Withdrawal Agreement—the performance of which is at issue in this lawsuit—was signed while Bickler was still an Illinois resident. *See* Bickler Aff. ¶ 4 (explaining that he lived in Illinois prior to 2000). The agreement was between Bickler, Sullivan, and Survivor Music's predecessor corporation, among others. *See* Compl., Ex. A, Withdrawal Agreement at 1. Among other things, the agreement contemplated that Sullivan and Survivor Music's predecessor would ensure that Bickler received royalty payments, in exchange for which Bickler would refrain from using the property of Survivor. *Id.* ¶¶ 5a, 5d. As the contract was negotiated and signed in Illinois, and the parties to the contract were domiciled in the state at the time, it is reasonable to assume that the parties contemplated that performance of

---

³   The evidence of this photo, attached as an exhibit to the declaration of Plaintiffs' lawyer Marianne Holzhall, does not actually show the year that it was posted. *See* Holzhall Decl., Ex. A, ECF No. 30. Bickler, however, does not contest the timing of the photo.

9

the agreement would occur in Illinois as well. *See Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, No. 14-CV-1859, 2014 WL 7261279, at *7 (N.D. Ill. Dec. 19, 2014) ("Because the provisions of the [contract] were so heavily negotiated in Chicago . . . it becomes more significant in the jurisdictional analysis."); *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970, at *5 (N.D. Ill. Nov. 1, 2002) ("Because the alleged contract was negotiated in part in Illinois and at the time the parties should have expected that performance would occur in Illinois, jurisdiction over the defendants in Illinois is proper[.]").

The parties' later performance of the agreement further supports this conclusion. Survivor Music, which is still located in Illinois, has consistently worked with Bickler or his attorney in order to meet its obligations under the agreement, including sending him paychecks from its Illinois bank account and preparing and issuing tax documents to Bickler from Illinois. *See generally* DiGiovanni Decl. & Exs., ECF No. 29. Accordingly, both the negotiation of the Withdrawal Agreement and the subsequent dealings between Bickler and Survivor Music indicate that Bickler would have expected at some point to be "haled into court" in Illinois if there was a contract dispute. *See Citadel Grp.*, 536 F.3d at 764. This is sufficient to establish specific jurisdiction, so the Court denies Bickler's motion to dismiss for lack of personal jurisdiction.

## II. Motion to Dismiss for Failure to State a Claim

### A. Trademark Infringement Claim

Bickler contends that Plaintiffs have failed to state a plausible claim that he infringed their trademark, "Survivor." A trademark infringement claim under the Lanham Act has two elements. *See* 15 U.S.C. § 1125(a). First, the plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, the plaintiff must show that "the challenged mark is likely to cause confusion among consumers." *Id.*

As to the first element, because "Survivor" is a registered trademark, Plaintiffs are entitled to a presumption that the name "Survivor" is distinctive and protected under the Lanham Act. *See* Compl. ¶ 10; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Bickler does not dispute this.

Rather, Bickler offers two arguments to support his motion. First, he contends that his use of the name is artistic expression protected by the First Amendment. Second, Bickler asserts that he is entitled to make "fair use" of the name "Survivor" to state the historical fact that he was previously a member of the band.

Bickler's First Amendment argument rests on his interpretation of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). In that case, the Second Circuit created a balancing test to determine if an artistic work can be subject to the Lanham Act. *Id.* at 999. Under that test, the Lanham Act is not applicable if the defendant's use of the mark is (1) "artistically relevant" to the work and (2) not "explicitly misleading" as to the source or content of the work. *Id.*; *see Fortres Grand Corp. v. Warner Bros.*

*Entm't Inc.*, 947 F. Supp. 2d 922, 931 (N.D. Ind. 2013), *aff'd on other grounds*, 763 F.3d 696 (7th Cir. 2014). Bickler contends that his description of his music career is necessary for his artistic expression and that it is not likely to confuse consumers since it is merely a statement of fact.

Although other circuits have adopted the *Rogers* test, *see Fortres Grand Corp.*, 947 F. Supp. 2d at 931 (collecting cases), the Seventh Circuit has yet to do so. And courts generally avoid deciding constitutional defenses to trademark enforcement where possible. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 705–06 (7th Cir. 2014); *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013). In any event, resolution of Bickler's First Amendment argument depends largely upon factual questions that are not properly resolved at the pleading phase. In short, the dispute boils down to whether Bickler's use of "Survivor" is artistic as opposed to commercial in nature. Here, the complaint plausibly alleges that Bickler uses the name "Survivor" to promote his appearances for commercial gain. *See* Compl. ¶ 11, Exs. B–D. As such, the Court declines to dismiss the complaint on First Amendment grounds. *See Mon Aimee Chocolat, Inc. v. Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *3 (N.D. Ill. Oct. 22, 2015).

Next, Bickler contends that he uses the name "Survivor" for "non-trademark, factual use." Def.'s Mem. Supp. Mot. Dismiss at 13, ECF No. 16. He points out that he often describes himself as a "former" member of the band, making it unlikely that consumers will be misled into believing that he is still associated with the band. But the "classification of a word or phrase as descriptive, the determination that a

defendant's use was a non-trademark use in good faith, and the finding that consumers are not likely to be confused" are issues of fact that are unamenable to resolution at the motion-to-dismiss stage. *Packman*, 267 F.3d at 637; *see Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 714–15 (N.D. Ill. 2014). "[T]he court's role at the motion to dismiss stage is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element[.]" *Slep-Tone*, 41 F. Supp. 3d at 715.

In making this determination, a court will consider: (1) the "similarity between the marks in appearance and suggestion"; (2) "similarity of the products"; (3) "the area and manner of concurrent use"; (4) "the degree of care likely to be exercised by consumers"; (5) "the strength of the plaintiff's mark"; (6) "whether actual confusion exists"; and (7) "whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677–78 (7th Cir. 2001). Here, Plaintiffs have set forth facts regarding some, but not all, of these factors. For example, Bickler allegedly uses the exact trademark in dispute—"Survivor." *See Eastland Music Grp.*, 707 F.3d at 871 (noting that if the defendant's work bore the same name as the plaintiff's, "allegations of confusion . . . could be omitted from the complaint"). Plaintiffs also allege that Bickler uses the name widely, including on his websites and in performances in Georgia and Illinois. Finally, Plaintiffs claim that "Bickler's continued unauthorized use of the mark SURVIVOR in connection with his musical performances creates the misleading impression that Bickler remains a member of or is otherwise affiliated with" the band. Compl. ¶ 13.

Whether these allegations are enough is a close issue, but the Court, drawing all reasonable inferences in Plaintiffs' favor (as it must do), concludes that the complaint adequately pleads a likelihood of consumer confusion to survive a motion to dismiss. Although some of the examples include the disclaimer that Bickler is a "former" member of Survivor, this is not always the case. For example, the "About Dave" page of his personal website merely describes the success of Survivor's "biggest hit, 'Eye of the Tiger,'" and does not explicitly state that Bickler is no longer affiliated with the band. *See* Compl., Ex. B. Similarly, Bickler's Instagram page describes him as the "original lead singer for the rock band Survivor," a phrase that does not ineluctably lead to the conclusion that Bickler is no longer a member of the band. *See id.*, Ex. C. And Bickler's use of the Instagram account with the handle "thesurvivordave" could confuse readers into believing that he remains affiliated with the band in some fashion.

Of course, it is quite possible that discovery will prove Bickler right and Plaintiffs wrong, but the complaint adequately states the required elements of a trademark infringement claim for pleading purposes. Factual questions regarding the likelihood of consumer confusion (if any), the descriptive nature of Bickler's use, and the precise manner of his use must be left for another day. Accordingly, the Court denies Bickler's motion to dismiss for failure to state a claim.

**B. Breach of Contract & Unfair Competition Claims**

As to the remaining two claims, Bickler argues only that, if the trademark infringement claim is dismissed, the Court lacks subject-matter jurisdiction over the

14

breach of contract and unfair competition claims. Because the Court declines to dismiss the trademark infringement claim, the Court denies Bickler's motion to dismiss the remaining claims on this basis.

## **Conclusion**

For the reasons stated herein, Bickler's motion to dismiss [16] is denied.

**IT IS SO ORDERED.**  ENTERED   1/25/19

*/s/ John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**